IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DANILO QUESADA-GUERRERO,

    Petitioner,

vs.                            Docket No.: 1:07-CR-43

UNITED STATES OF AMERICA,

    Respondent.



## PETITIONER'S MEMORANDUM OF LAW AND SUPPORTING APPENDIX IN SUPPORT OF HIS MOTION TO CORRECT, VACATE, AND/OR SET CONVICTION PURSUANT TO TILE 28 U.S.C. § 2255

Comes now Petitioner Danilo Quesada-Guerrero with this his Memorandum of Law and Supporting Appendix in support of his Motion to Correct and/or Vacate Conviction and Plea pursuant to Title 28 U.S.C. § 2255 and in support provides as follows:

### SUMMARY OF THE PROCEDURAL HISTORY

On April 13, 2007 Petitioner pled guilty to conspiracy to distribute five kilograms or more of a mixture and substance containing a detectable amount of cocaine hydrochloride (Count I) in violation of U.S.C. § 846 and 841(a)(1) and (b)(1)(A), and possession of firearm in furtherance of a drug trafficking crime (Count III) in violation of Title 18 U.S.C. § 924(c)(1)(A)(i) and (ii).

Once the Presentence Investigation Report ("PSI") was prepared, the Probation Officer determined that for sentencing purposes, unknown to Petitioner at the time, that he would be responsible between 50 and 150 kilograms of cocaine hydrochloride establishing a base offense level of 36. The Probation Officer also determined that pursuant to the Federal Sentencing Guidelines § 3A1.2(c)(1) that Petitioner was involved in a substantial risk of serious bodily injury while having reasonable cause to believe that a person was a law enforcement officer or assaulted such officer during the course of the offense while committing flight there from. The Probation Officer determined that a six level guidelines enhancement applied because of that violation.

Based on the initial Presentence Investigation Report, the Probation Officer determined that Petitioner should also be enhanced pursuant to the guidelines § 3C1.2 as well because Petitioner recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from law enforcement officers. Based on a three level reduction for acceptance of responsibility pursuant to § 3E1.1(a) Petitioner's total offense level was calculated at an offense level of 41 with a sentencing guideline exposure of 324 to 405 months incarceration as to Count I. Count III required a 60 month term of incarceration to be served consecutive.

On August 2, 2007, Petitioner's counsel filed objections to the presentence investigation report alleging error in the drug amount calculations, error in the application of the victim related six level adjustment for assaulting the officer with the firearm and objected to the application of an upward adjustment for recklessly creating a substantial risk of death or serious bodily injury to another person.

On November 7, 2007, the District Court heard testimony from three government witnesses in support of the enhancement and heard evidence in support of Petitioner in opposition of the enhancements.

The District Court immediately made a determination that the issue of acceptance of responsibility would have to be confronted in light of the Petitioner's testimony during the hearing and scheduled the sentencing hearing to continue at a later date.

At the completion of the second sentencing hearing, the District Court made a determination that Petitioner was not being forthcoming during his testimony, increased Petitioner's sentence by two levels for obstruction of justice pursuant to § 3C1.1 and denied Petitioner's acceptance of responsibility sentence reduction. Based on the District Court's determination, Petitioner's new offense level would be established at a level 46 which mandated an automatic sentence of LIFE incarceration.

On January 16, 2008, Petitioner was sentenced to LIFE incarceration as to Count I plus 60 months consecutive as to Count III of the indictment.

2

Case 1:07-cr-00043-NCT   Document 53   Filed 05/10/10   Page 2 of 20

Petitioner proceeded on appeal to the Fourth Circuit Court of Appeals, however, on February 18, 2009 the Court affirmed Petitioner's sentence and as imposed by the District Court. *See United States v. Quesada-Guerrero,* 311 Fed.Appx. 667, 2009 WL 393964 (C.A.4 (N.C.))

A Writ of Certiorari was not sought.[1]

### STATEMENT OF THE FACTS

#### 1. Overview of the Offense

During October of 2005, narcotics detectives with the Greensboro Police Department received information from a Confidential Source (CS) that Petitioner was keeping and selling large quantities of narcotics at his residence located off of High Point Road in Greensboro, North Carolina. The source also advised that Petitioner drove a grey Nissan Titan pick-up truck. On March 27, 2006, narcotics detectives were conducting surveillance of the Nissan Titan, being operated by Petitioner.

Petitioner drove two other Hispanic males to a trailer park in the 4300 block of Old Liberty Place in Greensboro, and parked next to a tractor trailer. Several minutes later, Petitioner drove from the tractor trailer and pulled in between trailers #83 and #84 in the trailer park and parked his vehicle. The investigation revealed that trailer #84 had been purchased by "Anado Sosa-Dominguez," a co-defendant in the instant indictment. A male subject took two bags from the trailer or the tractor trailer and placed them in the trunk of a white Honda automobile with temporary California registration that was parked in front of the tractor trailer. The Honda and the Nissan Titan then left the area and traveled in tandem until the Honda was stopped by law enforcement and the occupants of the vehicle were identified as Jose Antemio Olguin Valles (driver, El Monte, California), Francisco Vargas Ayala (Los Angeles, California) and Heberto Villareal (El Paso, Texas). A criminal history check indicated that Valles had a prior narcotics arrest in California. During the days following March 27, the detectives conducted surveillance of Petitioner, Amado Sosa-Dominguez and the individuals they met with as part of the investigation.

---

[1] A prisoner has one year from "the date on which the judgment of conviction becomes final" to file a Title 28 U.S.C. § 2255. *Id.* 28 U.S.C. § 2255 ¶ 6(1) In *Clay v. United States,* --- U.S. ----, 123 S.Ct. 1072, --- L.Ed.2d ---- (2003), the Supreme Court held that finality occurs when the time to seek certiorari expires (69 days after the mandate, for a litigant who did not seek rehearing or an extension of time).

3

On April 10, 2006, the Nissan Titan, occupied by Petitioner and two other males, traveled to a gas station, filled a large bucket with diesel fuel and then transported the fuel to the tractor trailer located at the trailer park, 4309 Old Liberty Place. One of these subjects was observed putting fuel into the tractor. During this time, a marked Guilford County Sheriff's patrol car drove into the trailer park. Upon sighting of the deputy, Petitioner hurriedly walked off from the area of the tractor trailer, while one of the other males was observed hiding under the tractor trailer. The patrol vehicle eventually left the trailer park.

During the evening of April 10, 2006, two males were observed to be sleeping in the cab of the tractor trailer, where such activity had not been observed previously. During the investigation, none of the subjects involved were observed to be engaged in any type of gainful employment. On April 11, 2006, surveillance team members advised that the tractor trailer, bearing California tag 4GL5283, was observed leaving from the trailer park. Surveillance continued on the tractor trailer, resulting in a traffic stop at approximately 7:23 a.m., on I-85 south near the Spencer, NC exit. The driver of the tractor trailer was identified as Francisco Vargas Ayala, the same subject who had been observed during the previous surveillances. Officers conducted a consent search of the tractor trailer, but nothing was located as a result of this search. The vehicle and its occupants were released. Telephone tolls from Ayala's telephone indicate that he made three calls to Petitioner between 8:03 a.m. and 8:07 a.m. Additionally, there were telephone calls between Petitioner and an individual named Francisco Flores between 8:04 a.m. and 8:05 a.m. At approximately 8:13 a.m., Detective B.S. Williamson, who had been maintaining surveillance of 4309 Old Liberty Pl. # 84, advised via the police radio that he observed a Francisco Javier Orduno Flores carried a rifle and a plastic shopping bag from the trailer into the thicket behind the trailer.

At approximately 8:40 a.m., members of the surveillance teams began seeing movement at some of the involved locations. Petitioner's Nissan Titan was observed to be parked in the driveway of 2206 Hubert St. During the surveillance, someone from the residence pulled the Titan further into the driveway, towards the back of the house.

4

At approximately the same time, a white Dodge Ram was observed to be leaving from 2295 Hwy 66 S, Kernersville, North Carolina. Surveillance advised that the driver of this vehicle was looking all around as he was driving. The Dodge Ram was observed making a loop around the surrounding area/neighborhood and then returning back to the residence. At approximately 8:54 a.m., the Nissan Titan left from 2206 Hubert St. The Titan was observed taking a very indirect route to the area of 2810 Dexter Avenue. However, the Titan did not stop at the Dexter Avenue residence, but continued driving past that residence. The Titan then returned to the neighborhood area near Hubert Street and drove around this area, before finally continuing on to 2810 Dexter Ave. While this was going on, a Dodge Ram truck was observed leaving again from 2295 Hwy 66 S, Kernersville, North Carolina. At approximately 9:17 a.m., the Dodge Ram turned onto Dexter Avenue from High Point Rd. However, the vehicle pulled into the parking lot of the Olive Garden and did a u-turn before continuing on to 2810 Dexter Ave. At approximately 9:45 a.m., a Nissan Maxima was observed arriving at 2810 Dexter Ave. Due to concern that the driver of the tractor trailer that was stopped by Highway Patrol would contact individuals at 4309 Old Liberty Place, trailer # 84, detectives approached that residence and requested consent to search.

Consent to search was granted and a Norinco 7.62 X 39 caliber semiautomatic rifle, model SKS, serial number 1200373C and plastic shopping bag containing packaging materials were located in the wooded area adjacent to the trailer.

At approximately 11:00 a.m., Petitioner codefendant Amado Sosa-Dominguez, and Arley Lovaina were observed exiting from 2810 Dexter Ave. and leaving in the Nissan Titan. A Greensboro Police patrol unit attempted to stop the Nissan Titan, but the Titan failed to stop and a vehicle pursuit ensued. During the pursuit, the Petitioner's vehicle traveled in excess of 80 miles an hour in a residential section of Greensboro. The pursuit ended when the Titan was involved in a single vehicle accident at 3702 Wedgedale Place, Greensboro, North Carolina. All of the occupants of the Titan fled the scene on foot.

Lying on the ground beside the front passenger door, two semi-automatic assault rifles were found: a Norinco 7.62 X 39 caliber semiautomatic rifle, model SKS, serial number 24002510A; and a Norinco 7.62 X 39 caliber semiautomatic rifle, model SKS, serial number 22001905A. During a search of the

interior of the Nissan Titan, detectives located a blue backpack, on the rear passenger floorboard, behind the driver's seat. Within this backpack were eight packages containing kilogram amounts of suspected cocaine. According to the DEA Laboratory Report, the packages contained 7.762 kilograms (net weight) of cocaine hydrochloride.

Also in the backpack was a blue nylon bag that contained an open plastic bag with 155.1 grams (net weight) of cocaine hydrochloride. The front pockets of the backpack contained a tied plastic bag with smaller green baggies that contained 58.8 grams (net weight) of cocaine hydrochloride. One of the small green baggies contained 1.8 grams (net weight) of cocaine base. Within a separate Ziploc bag, detectives located 0.13 grams (net weight) of cocaine hydrochloride. Also in the backpack, detectives found $13,020.00 in United States currency and a set of digital scales. During the foot chase of the three suspects, Petitioner brandished a firearm, and unsuccessfully attempted a carjacking of the driver of a minivan. When they apprehended him, officers located a loaded black Smith & Wesson .38 caliber revolver, model 36, serial number 491701, lying on the ground near Petitioner, and located a loaded Titan .25 caliber semiautomatic pistol, serial number D60373 in his front pants pocket.

Co-defendant Sosa-Dominguez was also arrested. Arley Lovaina, the third occupant of the Titan, escaped. Petitioner was advised of his Miranda rights in Spanish, which he waived, and allegedly admitted that he knew law enforcement had stopped the tractor trailer, because he had telephone contact with the truck driver, whom he knew as Francisco. Petitioner allegedly stated that he knew the tractor trailer had been searched, but that nothing had been found. However, according to the Government he stated that the tractor trailer did contain money, the payment for thirty kilograms of cocaine. Petitioner stated that when the tractor trailer arrived in Greensboro, it had a load of one hundred kilos of cocaine. Petitioner stated that the cocaine had been kept in the trailer (referring to 4309 Old Liberty Pl., # 84), but that now it was all gone.

6

## ARGUMENT

### I. THE CONVICTION OF MR. DANILO QUESADA IS VIOLATIVE OF HIS SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL

#### 1) The Performance of Counsel for Mr. Quesada Fell Below an Objective Standard of Reasonableness During the Pre-Trial Phase

a. Ineffectiveness Prong – Standard of Review

In *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), the Supreme Court established a two prong test to govern ineffective assistance of counsel claims. To obtain reversal of a conviction or to vacate a sentence based on ineffective assistance of counsel the Petitioner must show: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's objectively unreasonable performance, the result of the proceeding would have been different. *Id.* 466 U.S. at 688-689; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court stated that, "judicial scrutiny of counsel's performance must be highly deferential" and added that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance". *Id*

The Court clarified that this reference to "highly deferential scrutiny"[2] referred only to the first or performance prong of the test and meant that,

> "... the Petitioner must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Id. Strickland v. Washington*, 466 U.S. at 689-691

The Court added that,

> "... strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make a reasonable and proper decision that makes particular investigations unnecessary." *Id.*

---

[2] The Court stated that "factors which may actually have entered into counsel's selection of strategies and ... may thus affect the performance inquiry ... are irrelevant to the prejudice inquiry." *Strickland v., Washington*, 466 U.S. at 695.

7

Two years after its *Strickland* decision, the Court reaffirmed that this portion of the decision sets forth what test can be made in evaluating whether counsel was within the range of "reasonable professional assistance", or fell below an objective standard of reasonableness.[3] *Kimmelman v. Morrison*, 477 U.S. 365, 385-387, 91 L.Ed.2d 305, 106 S.Ct. 2574 (1986). *See also: Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).

The Supreme Court noted that, "a single, serious error may support a claim of ineffective assistance of counsel." *Id. Kimmelman v. Morrison*, 477 U.S. at 384.

The Court added that this "single serious error" could cause counsel's performance to fall "below the level of reasonable professional assistance", even where, "counsel's performance at trial was "generally creditable enough", and even where counsel had made "vigorous cross-examination, attempts to discredit witnesses, and [an] effort to establish a different version of the facts." *Id.* 477 U.S. at 386.[4] The government argued, and the Court agreed that the determining factor was whether or not counsel's "single serious error" or "failure" was the result of, or attributable to, a trial "strategy". *Id.*, 477 U.S. 384-386; *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000).

The Court then found that no "strategy" was involved in that case and that counsel's performance thereby fell below the *Strickland v. Washington* objective standard because counsel's failure was based "on counsel's mistaken beliefs" as to the laws governing discovery. *Id.* 477 U.S. at 385.

The Supreme Court added:

"Viewing counsel's failure to conduct any discovery from his perspective at the time he decided to forego that stage of pretrial preparation and applying a 'heavy measure of deference', *ibid.*, to his judgment, we find counsel's decision unreasonable, that is, contrary to prevailing professional

---

[3] This presupposes, for the instant argument, that the defendant provided counsel with complete and accurate information and did not place any restrictions on counsel's strategy. *Id. Strickland v Washington*, 466 U.S. at 691.

[4] See also *Murray v. Carrier*, 477 U.S. 478, 496, 91 L.Ed.2d 397, 106 S.Ct. 2639 (1986) ("The right to effective assistance of counsel ... may in a particular case be violated by even an isolated error of counsel if that error is sufficiently egregious and prejudicial."); *Smith v. United States*, 871 F.Supp. 251, 255 & [n.8] (E.D. Va. 1994) (finding performance below constitutional standards for "failure to raise an objection to a clear and indisputable error in. the PSR", but pointing out that "error was an innocent inadvertence, and not indicative of the entirety of counsel's representation of petitioner, which was competent and effective in all other respects.); *United States v. Al King Jones*, 2001 U.S. Dist. LEXIS 1740 (ED. LA 2-9-01) (same),

8

norms. The justification Morrison's attorney offered for his omission betray a startling ignorance of the law--or a weak attempt to shift blame for inadequate preparation. 'Counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.' *Id.* Respondent's lawyer neither investigated, nor made a reasonable decision not to investigate the State's case through discovery."

*Id. Kimmelman v. Morrison,* 477 U.S. at 385. In other words, the Court determined that counsel's omissions were not part of any "strategy" or trial tactic because they had not been taken after thorough investigation of the law and facts relevant to all plausible options available to counsel. From this, the Court determined that the omissions were professionally unreasonable and had caused counsel's performance to fall below the objective standard of *Strickland*. *See Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16; 146 L.Ed.2d 389 (2000). In short, no deference is due to counsel's actions, and the performance of counsel falls below the *Strickland* objective standard of reasonableness[5] if counsel's specific acts or omissions are not demonstrably[6] the result of actual strategic choices made between or among all plausible options "after thorough investigation of law and facts relevant to all possible options." *Strickland,* 466 U.S. at 691; *Kimmelman v. Morrison,* 477 U.S. at 385-387; *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00).[7] Where a convicted Petitioner is making a claim of ineffective assistance of counsel, the Petitioner,

---

[5] For purposes of this portion of the *Strickland* analysis, the Court presumes that counsel's failures were at least potentially prejudicial to the defendant. *Kimmelman v. Morrison,* 477 U.S. at 365, 387, 390-91.

[6] *See United States v. Burrows,* 872 F.2d 915, 918-919 (9th Cir. 1989)(record must "conclusively" demonstrate strategic nature of counsel's actions); *Harris v. Reed,* 894 F.2d 871, 878 (7th Cir. 1990) (reviewing court should "not construct strategic defenses which counsel does not offer")(citing *Kimmelman v. Morrison,* 477 U.S. at 386); *Moffet v. Kolb,* 930 F.2d 1156, 1160-61(7th Cir. 1991)(counsel's unexplained failure to use available police report, to impeach prosecution witness's statements and support theory of defense, below objective standard of *Strickland*); *United States v. Headley,* 923 F.2d 1079, 1084 (3rd Cir. 1991) (remanding for hearing where there was " rational basis" in the record to believe that sentencing counsel's failure, to argue for downward adjustment in Sentencing Guidelines for minor role, was a "strategic choice"); *United States v. Acklen,* 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson,* 857 F.2d 923, 929 (3rd Cir. 1988) (absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

[7] The courts have decided that counsel's failure to consider or investigate laws and facts relevant to potentially viable defenses cannot be said to be the result of reasonable professional judgment, nor can it be termed "strategic" or "tactical' or "objectively reasonable", because "counsel can hardly be said to have made a strategic choice against pursuing a certain line of investigation when he has not yet obtained the facts on which such, a decision could be made." *Gray, supra,* 878 F.2d at 711 (citing *Strickland,* 466 U.S. at 690-91); *Holsomback v. White,* 133 F.3d 1382(11th Cir. 1998) (same); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996).

9

"must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."

*Id. Strickland v. Washington*, 466 U.S. at 690.

If the record does not "conclusively" demonstrate "strategic reasons" for counsel's failures, the district court entertaining a motion under 28 USC § 2255 must hold an evidentiary hearing. [8] *A subsequent affidavit from counsel will not suffice to establish a trial strategy, nor absolve the district court from the requirement of holding an evidentiary hearing.* [9] In the instant case, Petitioner has made specific, sworn, factual allegations which this Court should accept as true for the purpose of considering whether to hold an evidentiary hearing, because they are not conclusively disproved by the files and records of this case.

### b. Prejudice Prong – Standard of Review

In writing for the majority in *Strickland v. Washington*, 466 U. S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984), Justice O'Connor stated the general rule that, actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the Petitioner affirmatively prove prejudice." *Id.* 466 U.S. at 693, 80 L.Ed.2d at 697.

More specifically, Justice O'Connor set forth the now well known statement of the test for "prejudice" in claims of actual ineffectiveness of counsel as:

> "The Petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Id.* 466 U.S. at 695, 80 L.Ed.2d at 698.

---

[8] *See United States v. Burrows*, 872 F.2d 915, 918-919 (9th Cir. 1989); *United States v. Briggs*, 939 F2d 222, 228 (5th Cir. 1991); *United States v. Estrada*, 849 F.2d 1304, 1306-1307 (1st Cir. 1988) and *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir, 1994); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994) (petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel unless claim inadequate on its face or if records conclusively refute factual assertions of claim); *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996) (same).

[9] *See Smith v. McCormick*, 914 F.2d 1153, 1170 (9th Cir. 1990) and *United States v. Giardino*, 797 F.2d 30, 32 (1st Cir. 1986) and *Lindhorst v. United States*, 585 F.2d 361, 365 (8th Cir. 1978).

10

While the Court noted the government's, perhaps natural, inclination to argue that attorney error is harmless unless the Petitioner can show that "counsel's deficient conduct more likely than not altered the outcome of the case", [10] the Court specifically and explicitly rejected this argument by the government. In rejecting any outcome determinative test such as that employed in Federal Rule of Criminal Procedure 33 analysis, the Court stated:

> The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Id. Strickland v. Washington,* 466 U.S. at 694; *Williams Taylor,* 120 S. Ct. 1495, 1519, (2000)[11]

The Court further specifically rejected the application of the "actual prejudice" standard of *United States v. Frady*, 456 U.S. 152, 71 L.Ed.2d 816, 102 S.Ct. 1584 (1982), to claims of ineffective assistance of counsel, with the following admonishment:

> "The principles governing ineffectiveness claims should apply in federal collateral proceedings as they do on direct appeal or in motions for a new trial. As indicated by the 'cause and prejudice' test for overcoming procedural waivers of claims of error, the presumption that a criminal judgment is final is at its strongest in collateral attacks on that judgment. *See United States v. Frady*, 456 U.S. 152, 162-169, 71 L.Ed.2d 816, 102 S.Ct. 1558 (1982). An ineffectiveness claim, however, as our articulation of the standards that govern decision of such claims makes clear, is an attack on the fundamental fairness of the proceedings whose result is challenged. Since fundamental fairness is the central concern of the writ of habeas corpus, *see id.* at 126, no special standards ought to apply to ineffectiveness claims made in habeas proceedings."

*Id. Strickland,* 466 U.S. at 697-98, 80 L.Ed.2d at 700.[12]

---

[10]This, of course, means that the 'plain error" standard also does not apply to ineffective assistance of counsel claims. *Id. See United States v. Olano*, 507 U.S. 725, 735 (1993) (plain error "must be real and such that it probably influenced the verdict.")

[11] *See also United States v. Day,* 969 F.2d 39, 45 and [n.3] (3rd Cir. 1992) (same) and *United States v. Loghery,* 908 F.2d 1014, 1018-1020 (D.C. Cir. 1990) (same). While some Courts have held that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) modified *Strickland* "to require a separate inquiry into fundamental fairness even when [Petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding", *Williams v. Taylor,* 120 S. Ct, 1495, 1512-16, 146 L. Ed. 2d 389 (2000), this construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where the "different outcome" would be contrary to the law. *Id.* As Justice O'Connor carefully pointed out in *Lockhart v. Fretwell,:*

> "... today's decision will, in the vast majority of cases, have no effect on the prejudice inquiry under *Strickland.* The determinative question - whether there is 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different' ... remains unchanged," *Id.* 506 U.S. at 373 (O'Connor) (concurring).

The Court hearing an ineffectiveness claim should consider the totality of the factors which guided the decision maker in the challenged proceeding, then try to determine which factors were or were not "affected" by counsel's errors.

> "Taking the unaffected [factors] as a given, and taking due account of the effect of the errors on the remaining [factors] a court making the prejudice inquiry must ask if the Petitioner has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."

*Id. Strickland v. Washington,* 466 U.S. at 696, 80 L.Ed2d at 699.

Where through "hindsight"[13] the Court can determine that, but for the errors of counsel, there is a "reasonable probability" of a different outcome, a probability sufficient to "undermine confidence" in the challenged proceedings, the Petitioner has affirmatively proven prejudice. *Strickland,* 466 U.S. at 694-95; *United States v. Glover,* 121 S.Ct. 696 (2001); *Williams v Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000).[14]

This rule is applicable to find "prejudice" where hindsight demonstrates that counsel's constitutionally deficient performance deprived a federal criminal Petitioner of a consideration for a favorable adjustment or downward departure under the United States Sentencing Guidelines. *United States v. Glover,* 121 S.Ct. 696 (2001)(rejecting Court of Appeals' rule that only a 'substantial' change in application of sentencing guidelines constituted "prejudice" within the meaning of *Strickland*).[15] The

---

[12] *See Kimmelman v. Morrison,* 477 U.S. at 375, 393 and [n.1] (demonstration of "a reasonable probability" that the verdict would have been different constitutes "actual prejudice" in claims of actual ineffective assistance of counsel); *Oshorn v. Shillinger,* 861 F.2d 612, 626 and [n.13] (10th Cir. 1988) (same); *Smith v. United States,* 871 F.Supp. 251, 255 (ED. Va. 1994) (same).

[13] *Lockhart v. Fretwell,* 122 L.Ed.2d at 189-91; *Mayo v. Henderson,* 13 F.3d 528, 534 (2nd Cir. 1994) (prejudice determination, unlike performance determination, may be made with benefit of hindsight")

[14] In *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00), the Supreme Court recently, explicitly, rejected the theory that *Lockhart v. Fretwell,* 506 U.S. 364, 373, 122 L.Ed.2d 180, 189, 113 S.Ct. 838 (1993) somehow modified *Strickland* "to require a separate inquiry into fundamental fairness even when [petitioner] is able to show that his lawyer was ineffective and that his ineffectiveness probably affected the outcome of the proceeding". *Williams v. Taylor,* 120 S.Ct. 1495, 1512-116, 146 L.Ed.2d 339 (4-18-00). This construction of *Lockhart v. Fretwell,* was specifically addressed and rejected by the Supreme Court in *Williams v. Taylor.* The Supreme Court's holding in *Lockhart v. Fretwell,* was limited to circumstances where a "different outcome" would be contrary to the law. *Id. See also: Mays v. Gibson,* (10th Cir. 2000)(citing *Williams v. Taylor,* 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (2000)); *Jackson v. Calderon,* 2000 US App. LEXIS 9049 (9th Cir. 5-8-2000) (same).

[15] *See also United States v. Breckenridge,* 93 F.3d 132, 136 (4th Cir. 1996) ("The failure to object to an improper application of the sentencing guidelines may amount to ineffective assistance of counsel") (collecting cases); *United*

12

*Strickland* test for "prejudice" is applicable to cases where a criminal Petitioner is challenging his conviction or sentence due to actual ineffective assistance of counsel, in the prosecution of his direct appeal, *Banks v. Reynolds*, 54 F.3d 1508 (10th Cir. 1995),[16] with the caveat that "prejudice" in this type of case is limited to the "outcome" of the direct appeal. It does not require the Petitioner to demonstrate that he would be "successful on remand"; only that there is a *reasonable probability* that he would have had his conviction arid/or sentence vacated and/or remanded to the lower court. *United States v. Mannino*, 212 F.3d 835 (2nd Cir. 2000)

Based on the foregoing facts and law, Petitioner has affirmatively pleaded "prejudice" in his case within the meaning of *Strickland v. Washington*, 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984) and *United Stases v. Glover*, 121 S.Ct. 692 (2001); *Williams v. Taylor*, 120 S.Ct. 1495, 1512-16, 146 L.Ed.2d 389 (4-18-00); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992) and *Orazio v. Dugger*, 876 F.2d 1508, 1513-14 (11th Cir. 1989).

---

*States v Kissick*, 69 F.3d 1048, 1056 (10th Cir. 1995) (same) and *Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (same) and *United States v. Acklen*, 47 F.3d 739, 743 (5th Cir. 1995) (same) and *United States v. Headley*, 923 F.2d 1079, 1083-84 (3rd Cir. 1991) (same) and *Smith v. United States*, 871 F.Supp. 251, 255 (E.D. Va. 1994) (same) and *Cabello v. United States*, 884 F.Supp. 298, 302-303 (N.D. MD 1995) (same) and *Spearman v. United States*, 860 F.Supp. 1234, 1244-46 (E.D. Mich. 1994) (failure to provide grounds for potential downward departure under guidelines ineffective assistance) and *United States v. Partee*, 31 F.3d 529, 534 (7th Cir. 1994) (failure to move court for downward departure under guidelines may constitute "prejudice" under *Strickland*) and *United States v. Graham*, 884 F.Supp. 13, 14 and [n.1] (D.D.C. 1995)(same) and *Nichols v. United States*, 75 F.3d 1137 (7th Cir. 1996)(unprofessional failure to challenge relevant conduct as violative of U.S.S.G. § 1B1.3 prejudiced defendant within the meaning of *Strickland*) and *United States v. Londono*, 998 U.S. App. LEXIS 7482 (7th Cir. 1997)(unprofessional failure to challenge enhancement for "leadership role" prejudiced defendant within the meaning of Strickland).

[16] *See also United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) (holding that counsel was deficient because he did not "keep abreast of legal developments related to [Petitioner's] case" which would have revealed a solid and meritorious appellate issue); *United States v. Mannino*, 212 F.3d 835; 2000 U.S. App. LEXIS 10382 (2nd Cir. 2000); *Mayo v Henderson*, 13 F.3d 528 (2nd Cir. 1994); *Freeman v. Lane*, 962 F.2d 1252 (7th Cir. 1992); *Orazio v. Dugger*, 876 F.2d 1508 (11th Cir. 1989); *Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987); *Grady v. Artuz*, 931 F.Supp. 1048 (S.D.N.Y. 1996); *Daniel v. Thigpen*, 742 F.Supp. 1535 (M.D. Ala. 1990)

**PETITIONER PROVIDES THAT COUNSEL WAS INEFFECTIVE WHEN HE FAILED TO ADVISE HIM THE REPERCUSSIONS OF THE FEDERAL SENTENCING GUIDELINES AND HOW THEY WOULD BE APPLIED TO CALCULATE HIS FINAL SENTENCE THUS RENDERING HIS PLEA INVOLUNTARY**

Petitioner presents, via a sworn affidavit attached to this Memorandum of Law, that counsel rendered ineffective assistance violating his Sixth Amendment right to effective assistance of counsel at all pre-trial stages, when counsel failed to take the opportunity to explain to Petitioner the ramifications of the Federal Sentencing Guidelines should he plead guilty versus proceed to trial. Petitioner presents that at no time during the preparation of the trial, did counsel take an opportunity to explain to Petitioner, even in the basic operation of the Sentencing Guidelines as to how drug quantity would be determined, the possibilities of substantial sentence enhancements in light of the sentencing guideline § 3A1.2(c)(1), the application of the Federal Sentencing Guidelines § 3C1.2, and how the acceptance of responsibility portion for the guidelines could be lost if an enhancement of the guidelines § 3C1.1 was applied.

Petitioner presents that when the original factual basis of this case was presented to the Court for acceptance of the guilty plea, that counsel had in his possession prior to advising Petitioner to provide his guilty plea, a copy of the factual basis that would be used in the acceptance of the plea. Petitioner presents that armed with that information, counsel had an obligation to sit with Petitioner and advise Petitioner of the ramifications and possible sentencing exposures based on the facts presented in the factual basis. Also, during the discovery preparation of the instant case, counsel was provided with a detailed documentation and/or tracking logs of Petitioner's vehicle, which were used during the sentencing hearing to show the extent of Petitioner's erratic driving during his attempt to flee. Those logs and/or that were obtained from the tracking device that was placed on Petitioner's vehicle, were in counsel's possessions as they were provided as part of the discovery during the preparation of the case. Counsel had an obligation to utilize all that information in making determinations as to the possible sentencing exposure that Petitioner would be facing if he pled guilty.

Ironically, the government relied on those tracking logs, to show the Court a detailed presentation as to the direction of travel, speed of travel, and the avenues and roads that Petitioner's vehicle traveled

14

during the time of his attempt to escape from being arrested. Those detailed reports and presentations were able to show the District Court the exact speed and location at which Petitioner's vehicle was traveling during its attempt to flee from custody. Had counsel taken an opportunity to review with Petitioner the Federal Sentencing Guidelines and the implications that those tracking logs would have for sentencing purposes, counsel would have immediately realized that based on the information that was in counsel's his during the time of the preparation of this case prior to the change of plea, that it is evident that Petitioner's sentence was going to be enhanced pursuant to § 3A1.2 and § 3C1.2 of the Federal Sentencing Guidelines. Counsel had a professional obligation to explain to Petitioner the extent of the sentence enhancements that he would receive when those enhancements are applied prior to advising Petitioner to proceed to pleading guilty. Although counsel does not have to provide an accurate sentence that Petitioner would receive, basic understanding and explanation of the sentencing guidelines has become an integral part of effective representation. At no point, did counsel ever take an opportunity to explain to Petitioner that these enhancements would elevate Petitioner's sentence. (See Appendix A - Sworn Affidavit) Furthermore, at no time during the preparation of the pretrial portions of this case, did counsel take an opportunity to explain to Petitioner how the relevant conduct portions of the Guidelines would be used to calculate his sentence. Petitioner presents via his sworn affidavit, that he would have never proceeded to pleading guilty and would have made the government meet its burden of proof of beyond a reasonable doubt by proceeding to trial had he known that the Court and/or the Probation Officer could impose a sentence far more elevated than that drug quantities presented in the indictment. Although the District Court advised Petitioner that the final determination on sentence will be made by the Court itself, Petitioner was always assured and under the impression that his sentence would be determined based on the seven kilograms of cocaine recovered from the vehicle after the accident that occurred as a result of the short chase prior to being apprehended.

In other words, breaking this portion of the argument even simpler, Petitioner presents that at no stage did counsel ever advise him as to how relevant conduct would be used to calculate his final sentence above the seven kilograms secured by the government immediately after his arrest. Counsel did not take

15

Case 1:07-cr-00043-NCT   Document 53   Filed 05/10/10   Page 15 of 20

an opportunity to explain to Petitioner the possible sentence enhancements based on the victim related adjustment and the adjustment for obstruction based on the creating substantial risk of death or serious bodily injury to another person. Counsel, armed with the information of the detailed logs and videos showing the extent of Petitioner's erratic driving via the residential district, counsel should have known that the Probation Officer will in all actuality enhance Petitioner's sentence substantially. Had counsel taken the opportunity to explain to Petitioner the possibility/assurance that his sentence would be elevated by an additional eight level based on the information that counsel had in his possession at the time, Petitioner presents that he would have never proceeded to pleading guilty, would have never accepted the government's plea offer, and would have proceeded to trial as is his constitutional right.

In essence, Petitioner has presented via the detailed sworn affidavit attached to this Memorandum, that had he known that additional enhancements were surely to be applied to his sentence which was known to counsel based on the information that counsel had in his possession and should have reviewed, that he would have never accepted a plea of guilt and would have proceeded to trial.

In all actuality, Petitioner provides that as a Category I offender with no criminal history, he had absolutely no expectation that his sentence would be elevated based on the determinations made by the Probation Officer. There has been no prior experience with the legal system that would have led Petitioner to believe that such enhancements could have possibly been applied in the instant matter. In order to prevail on [an ineffective counsel argument], Petitioner must show that his attorney made 'errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment' and that 'counsel's' errors were prejudicial; that is, 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky,* 689 F.2d 435 (3rd Cir. 1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart,* 474 U.S. 52, 56-

16

Case 1:07-cr-00043-NCT    Document 53    Filed 05/10/10    Page 16 of 20

an opportunity to explain to Petitioner the possible sentence enhancements based on the victim related adjustment and the adjustment for obstruction based on the creating substantial risk of death or serious bodily injury to another person. Counsel, armed with the information of the detailed logs and videos showing the extent of Petitioner's erratic driving via the residential district, counsel should have known that the Probation Officer will in all actuality enhance Petitioner's sentence substantially. Had counsel taken the opportunity to explain to Petitioner the possibility/assurance that his sentence would be elevated by an additional eight level based on the information that counsel had in his possession at the time, Petitioner presents that he would have never proceeded to pleading guilty, would have never accepted the government's plea offer, and would have proceeded to trial as is his constitutional right.

In essence, Petitioner has presented via the detailed sworn affidavit attached to this Memorandum, that had he known that additional enhancements were surely to be applied to his sentence which was known to counsel based on the information that counsel had in his possession and should have reviewed, that he would have never accepted a plea of guilt and would have proceeded to trial.

In all actuality, Petitioner provides that as a Category I offender with no criminal history, he had absolutely no expectation that his sentence would be elevated based on the determinations made by the Probation Officer. There has been no prior experience with the legal system that would have led Petitioner to believe that such enhancements could have possibly been applied in the instant matter. In order to prevail on [an ineffective counsel argument], Petitioner must show that his attorney made 'errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment' and that 'counsel's' errors were prejudicial; that is, 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The court pointed out that because of the distorting effect of hindsight, a reviewing court must exercise care in determining whether counsel's actions fall below an objective standard of reasonableness. Petitioner has a right to competent counsel during the critical stages of the criminal process. *See Caruso v. Zelinsky,* 689 F.2d 435 (3rd Cir. 1982). Moreover, petitioner "has the right to make a reasonably informed decision whether to accept a plea offer." *United States v. Day,* 969 F.2d 39, 43 (3rd Cir.1992) (*citing Hill v. Lockhart,* 474 U.S. 52, 56-

57, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985)). Counsel's incompetent advice, violated the petitioner's Sixth Amendment right to counsel. *See McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

In the instant matter as an analogy, in *United States v. McCoy*, 215 F.3d 102 (D.C. Cir. 2000) counsel advised his client of an incorrect application of the Sentencing Guidelines. On appeal, McCoy argued that his plea was unconstitutional because it was based on ineffective assistance of counsel. The District of Colombia agreed; it found that McCoy's plea had not been knowingly and voluntarily made. *Id.* Following this same analogy, Petitioner provides that his decision not to proceed to trial was based on his attorney's failure and incomplete explanation of the guidelines and how they would apply to his case. (*See* Appendix - A, Sworn Affidavit)

The *McCoy* Court noted that "[W]hile not every error made in calculating an applying the guidelines would constitute deficient performance under *Strickland*, the Court emphasized that 'familiarity with the structure and basic content of the Guidelines, had become a necessity for counsel who seek to give effective representation.'" *Id.* at 508 The Court further found that the prejudice prong of *Strickland* test was satisfied, in that the difference between the sentencing ranges was so significant that there was a reasonable probability that if *McCoy* had been given correct information he would not have entered a guilty plea. *Id.*[17] Counsel's failure to familiarize himself with the relevant portions of the Sentencing Guidelines causes his actions to fall below a reasonable standard of performance because a "[c]riminal defense attorneys practicing in the federal courts are expected to keep abreast of issues that affect his client's case." *Id. United State v. Loughery*, 908 F.2d 1014 (D.C. Cir. 1990)

In Petitioner's cause, he must only show that there is a "reasonable probability" that the results of his decision to proceed to trial would have been different, *Id. Williams v. Taylor*, 529 U.S. 362, 386, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) and based on the difference in sentencing guideline ranges, there

---

[17] Although Petitioner did not proceeded to trial based on his counsel's misinformation of the relevant conduct portions of the Sentencing Guidelines, the same analogy as that presented by the *McCoy* Court can be reached in Petitioner's case. Had it not been for the misinformation received by his trial attorney, Petitioner would have never pled guilty.

17

could be no doubt that a different outcome is evident. (*See* Appendix - A Sworn Affidavit) Based on the record and the files before this Court, there is a reasonable probability that counsel's actions have reached a level of ineffectiveness as enumerated in *Strickland*. Furthermore, there could be no strategic reason why counsel can justify his failure to explain the implications of the guidelines relevant conduct sections and all the other related enhancement sections to Petitioner. *See United States v. Acklen*, 47 F.3d 739, 743-44 (5th Cir. 1995) (remanding for evidentiary hearing where there was nothing in record to indicate counsel's failures were attributable to strategic choice among all plausible alternatives available for defense); *United States v. Dawson*, 857 F.2d 923, 929 (3rd Cir. 1988)(absent evidence in the record, "this court will not speculate on trial counsel's motives"); *Nichols v. United States,* 75 F.3d 1137 (7th Cir. 1996) (same).

Accordingly, Petitioner respectfully prays this Honorable Court determine that counsel's actions have reached the level of ineffectiveness and remand for an evidentiary hearing on the merits raised herein.

**THE CUMULATIVE IMPACT OF TRIAL COUNSELS ERRORS ADDRESSED HEREIN REQUIRE AN EVIDENTIARY HEARING**

Petitioner contends that each of the errors addressed herein was sufficiently prejudicial to require a reversal of his plea. However, should the court disagree, then the cumulative effect of the errors deprived Petitioner of fair and just assistance of counsel. "Individual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect ... so as to deny due process." *United States v. Fernandez,* 145 F.3d 59, 66 (1st Cir. 1998) *See, e.g., United States v Hands,* 184 F.3d 1322, 1334 (11th Cir. 1999); *United States v. Munoz,* 150 F.3d 401, 418 (5th Cir. 1998), *cert. denied,* 525 U.S. 1112 (1999). The errors here were many, they were all interrelated and their cumulative impact was devastating to Petitioner's right to due process and a clear violation of his Sixth Amendment right to effective assistance of counsel.

Wherefore, Petitioner respectfully prays this Honorable Court vacate Petitioner's plea due to the cumulative effects of counsel's errors. In the alternate, Petitioner requests that an evidentiary hearing be

18

granted to allow Petitioner and opportunity to address the facts of the issues raised and further develop the record.

**AN EVIDENTIARY HEARING IS NECESSARY AND WOULD BE USEFUL TO THE COURT**

Title 28, United States Code, Section 2255 provides that a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released or for reduction of sentence may move the court which imposed the sentence to vacate, set aside or correct the sentence. This section also provides as follows:

> "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

*Id.* Title 28 U.S.C. § 2255

In the instant case as set forth in the Statement of Claim of the § 2255 motion, and the foregoing arguments, Petitioner has pleaded, presented evidence, and argued the applicable law to demonstrate that his plea is violative of his Sixth Amendment right to effective assistance of counsel in the pre-trial process. Petitioner has also pleaded, presented evidence, and argued the applicable law to demonstrate that his conviction is violative of his Sixth Amendment right to effective representation by counsel in the pre-trial phase.

While many of the allegations are already well established by the files and records of this case, many of the material allegations concern events which took place outside the courtroom and are not, therefore, part of the "files and records". These allegations require an evidentiary hearing under well settled law. *United States v. Blaylock*, 20 F.3d 1458, 1465 (9th Cir. 1994)(evidentiary hearing required unless § 2255 motion, files, and trial record "conclusively show" petitioner entitled to no relief); *Virgin Islands v. Weatherwax*, 20 F.3d 572, 573 (3rd Cir. 1994)(petitioner entitled to evidentiary hearing on ineffective assistance of counsel claim where facts viewed in light most favorable to petitioner would entitle him to relief); *Stoia v. United States*, 22 F.3d 766, 768 (7th Cir. 1994) (same); *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir 1994) (same); *Nichols v. United States*, 75 F.3d 1137, 1145-46 (7th Cir. 1996)

(petitioner entitled to evidentiary hearing on claim of ineffective assistance of counsel when record inconclusive on issue); *United States v. Witherspoon*, 231 F.3d 923 (7th Cir. 2000).

Based on all of the foregoing, Petitioner respectfully requests this Honorable Court to **ORDER** an evidentiary hearing where he can prove the extent of prejudice is he suffering in the instant matter.

## CONCLUSION

**WHEREFORE** Petitioner Danilo Quesada Guerrero respectfully asks this Honorable Court to: (A) **ORDER** an evidentiary hearing as set forth in his § 2255 motion; and, upon proof of his allegations herein, **ORDER** that Petitioner's plea and conviction be **VACATED**.

Done this _05_, May 2010

I hereby do certify that pursuant to Penalty of Perjury Title 28 U.S.C. § 1746 that on this _05_ day of May 2010 I signed and mailed this document via the Federal Bureau of Prisons' Legal Mail System.

_____
Mr. Danilo Quesada-Guerrero
Register No.: 23615-057
Hazelton USP
P.O. Box 2000
Bruceton Mills, WV 26525