# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA


| | |
|---|---|
| **DANILO QUESADA-GUERRERO,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **1:10CV367** |
| **v.** ) | **1:07CR43-1** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |


## <u>RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE</u>


Petitioner Danilo Quesada-Guerrero, a federal prisoner, has brought a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. (Docket No. 52.)[1] Petitioner was indicted on one count of conspiracy to distribute cocaine hydrochloride in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), one count of distribution of cocaine hydrochloride in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and one count of possession of firearms during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Docket No. 1.) Petitioner later pled guilty to the conspiracy and firearm counts with the hopes of gaining a sentencing reduction through cooperation with the government. Unfortunately for Petitioner, this cooperation did not result in the desired motion for a sentence reduction. He also testified at sentencing and then lost arguments

---

[1] This and all further cites to the record are to the criminal case.

concerning certain sentencing enhancements, lost a sentencing reduction for acceptance of responsibility, and incurred a further two-level sentencing enhancement for obstruction of justice. (Docket Nos. 47, 48.) He was sentenced to life imprisonment on the conspiracy count and a consecutive 60 months of imprisonment on the firearms count. (Docket No. 38.) Petitioner did file a direct appeal, but the judgment was affirmed. (Docket Nos. 49, 50.) Petitioner then filed his § 2255 motion. Respondent has filed a response asking that the motion be denied (Docket No. 65), while Petitioner has submitted a reply (Docket No. 72). Petitioner's motion is now before the Court for a ruling. *See* Rule 8, Rules Governing Section 2255 Proceedings.

## **FACTS**

The basic facts of the case, as set out by the Fourth Circuit Court of Appeals on direct appeal, are as follows:

In the spring of 2006, Quesada-Guerrero and several co-conspirators were under surveillance for suspected drug trafficking, during which time they were observed removing bags from a tractor trailer with a California license plate that was parked at a trailer park in Greensboro, North Carolina, and later refueling the tractor trailer at the park. When the tractor trailer left Greensboro, it was stopped on the interstate highway and searched, but no contraband was found. After he was released, the driver of the tractor trailer called Quesada-Guerrero three times in quick succession.

Later that morning, Quesada-Guerrero and others under surveillance were observed driving from various addresses they frequented to Quesada-Guerrero's residence, taking evasive measures as they did so. Quesada-Guerrero then drove away with two men in his Nissan Titan pickup truck. When a Greensboro police unit attempted to stop the truck,

Quesada-Guerrero refused to stop and fled at high speed, eventually crashing the truck into a tree.[1] A police officer, Corporal Gill, chased Quesada-Guerrero on foot through a residential area. Carrying a handgun, Quesada-Guerrero approached Jeanne Thilo, who was in her driveway packing her van for a trip, and tried to carjack the vehicle. Thilo pushed him away and Quesada-Guerrero again fled, with Corporal Gill ordering him to stop. Quesada-Guerrero turned toward Gill and pointed his gun at Gill, who took cover. When other police officers arrived, Quesada-Guerrero was located hiding under a boat behind a neighboring house. A loaded .38 caliber revolver was on the ground near him and he had a loaded .25 caliber pistol in his pocket. One of the passengers in the truck, Amado Sosa-Dominguez, was also apprehended. The other, Arley Lovaina, escaped.

> FN1 Beside the crashed truck, police found two semi-automatic assault rifles. Inside the truck, they found packages containing a total of 7.762 kilograms of powder cocaine, bags containing an additional 214.03 grams of powder cocaine, 1.8 grams of cocaine base, $13,020 in cash, and a digital scale.

According to information contained in the presentence report, Quesada-Guerrero waived his Miranda [footnote omitted] rights and acknowledged that the driver of the tractor trailer called him when the trailer was stopped and searched. He said the trailer was carrying money in payment for thirty kilograms of cocaine, which had not been discovered, and that the trailer initially brought 100 kilograms of cocaine to Greensboro which had been stored at the trailer park, but was no longer there.

However, in written objections to the presentence report, Quesada-Guerrero challenged the recommended adjustments. He denied making the statement about money hidden in the tractor trailer, attempting the carjacking, and pointing a gun at Corporal Gill. At sentencing, Thilo, Gill, and Detective Williams, who took Quesada-Guerrero's post-arrest statement, all testified about his conduct. In his own testimony Quesada-Guerrero repeated his denials. Finding that Quesada-Guerrero's testimony raised the possibility that he had given knowingly false testimony concerning material matters, and thereby obstructed justice, calling into question his acceptance of responsibility, the district court continued the sentencing for several days to allow the parties time to prepare to address these issues. When sentencing recommenced, the court determined that Quesada-Guerrero had given perjured

testimony. The court added an adjustment for obstruction of justice, and denied him an adjustment for acceptance of responsibility.

(Docket No. 32 at 2-5 .)

## **PETITIONER'S CLAIMS**

Petitioner lists two claims for relief in his motion, although they are really one claim. His first claim is that his attorney did not first advise him of how the United States Sentencing Guidelines would be applied at sentencing before advising him to plead guilty, thereby rendering his plea invalid. His second claim merely states that his attorney's errors require that his conviction be vacated.

## **DISCUSSION**

Petitioner's claim is one for ineffective assistance of counsel. In order to prove ineffective assistance of counsel, a petitioner must establish, first, that his attorney's performance fell below a reasonable standard for defense attorneys and, second, that he was prejudiced by this performance. *See Strickland v. Washington*, 466 U.S. 668 (1984). Petitioner is not entitled to a hearing based upon unsupported, conclusory allegations. *See Nickerson v. Lee*, 971 F.2d 1125, 1136 (4th Cir. 1992) (in order to obtain an evidentiary hearing a habeas petitioner must come forward with some evidence that the claim might have merit), *abrog'n on other grounds recog'd*, *Yeatts v. Angelone*, 166 F.3d 255 (4th Cir. 1999). A petitioner bears the burden of affirmatively showing deficient performance. *See Spencer v. Murray*, 18 F.3d 229, 233 (4th Cir. 1994). To show prejudice following a guilty plea, a

petitioner must establish that there is a reasonable probability that but for counsel's allegedly deficient conduct, he would not have pled guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52 (1985). The Court must determine whether "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. ___, ___, 130 S. Ct. 1473, 1485 (2010)(citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)). This determination is an objective one which is "dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007).

Purely for the purposes of deciding Petitioner's motion, the Court accepts as true his allegations that his attorney did not properly discuss the Sentencing Guidelines and their implications for Petitioner.[2] It will also assume that these failures would constitute deficient performance. Nevertheless, Petitioner must still show prejudice under the standards just set.

Petitioner makes statements in both his initial motion and his reply brief that he would not have pled guilty, but would have gone to trial, had he understood how the Guidelines would affect his sentence. However, he provides little explanation of why this is so. As was set out by the Fourth Circuit on appeal, Petitioner was the target of lengthy law enforcement surveillance, fled wildly when police attempted to stop his vehicle, and had about eight

---

[2] This is not to say that the allegations are actually true. Petitioner's former attorney has submitted an affidavit denying the allegations. The Court is merely assuming them to be true at this point. There is no need to resolve the dispute between Petitioner and his attorney.

kilograms of cocaine and $13,000 in cash in his vehicle at the time. There were also several weapons in the vehicle. Two witnesses, a law enforcement officer and the near-victim, testified that Petitioner had tried to carjack a van while fleeing. Also, the law enforcement officer testified that Petitioner pointed a gun at him during a foot chase. Surveillance and telephone calls tied Petitioner to the tractor trailer alleged to have transported a large amount of cocaine. Finally, a second law enforcement officer testified that Petitioner waived his rights after his arrest and confessed that the tractor trailer had once contained 100 kilograms of cocaine and had contained money received in payment for 30 kilograms of cocaine even at the time it was later stopped by police. Petitioner points to no evidence which he could have used to counter all of the evidence against him at trial or at sentencing following trial. He could have perhaps taken the stand to testify in his defense, but there is no prospect that this would have gone better at trial than it did at sentencing. There is no reasonable prospect that Petitioner could have prevailed at trial.

Perhaps in an attempt to escape the reality just described, Petitioner makes a statement in his reply brief that he would have been better off had he gone to trial, sat silently, and been convicted rather than plead guilty as he did. He claims that if he had done this, "there is still a reasonable probability that the court would have sentenced [him] to a lower sentence than he is currently serving." (Docket No. 72 at 5 n.1.) This is incorrect. If Petitioner had gone to trial and been convicted, his sentence would still have been calculated in the same manner except that the Presentence Report would likely not have, as it did following his guilty plea,

recommended any reduction for acceptance of responsibility. It is true that by not testifying at trial, Petitioner would not have subjected himself to a two-level increase for obstruction of justice. However, even without that increase, his final offense level would have been 44. (PSR ¶ 28.) Anything over 42 produces a Guidelines range of life imprisonment. Therefore, going to trial, keeping silent, and losing would have produced exactly the same sentence he is now serving.

In the end, Petitioner had only one realistic choice and that is the one that he picked. He pled guilty and attempted to receive credit for substantial assistance and acceptance of responsibility. This strategy did not ultimately succeed given that Petitioner still received a life sentence.[3] That outcome makes it understandable that he is now unhappy with the situation. However, as just set out above, there is more to be considered than the eventual outcome of the proceedings. The Court must consider whether Petitioner had any reasonable alternative to pleading guilty. He did not, no matter how thoroughly the Guidelines were or

---

[3] Of course, the reasons that it did not succeed also lie with Petitioner. He could have testified against a co-defendant whom he had previously implicated in the cocaine conspiracy, but changed his story at the last minute and claimed that the co-defendant had nothing to do with the conspiracy. (Docket No. 47 at 42-43.) It was also Petitioner who testified at his sentencing not just that he did not attempt to steal the van or point a gun at an officer, but that he did not make any statement that the tractor trailer once contained 100 kilograms of cocaine and that he had no involvement with any cocaine conspiracy whatsoever. (*Id*. at 40.) His changes in his statements and complete denial of any involvement with cocaine destroyed what had once been a reasonable and workable strategy.

were not explained to him.  For that reason, he cannot show prejudice and his § 2255 motion should be denied.

IT IS THEREFORE RECOMMENDED that Petitioner's motion to vacate, set aside or correct sentence (Docket No. 52) be denied and that this action be dismissed.

_____/s/ P. Trevor Sharp_____
United States Magistrate Judge

Date:  February 1, 2011